UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

HOUSLEY et al.　　　　　　　　　　＊
　　　　Plaintiffs　　　　　　　　＊
　　　　　　　　　　　　　　　　　＊
　　v.　　　　　　　　　　　　　　＊　　　　CIVIL NO. L-10-1881
　　　　　　　　　　　　　　　　　＊
HOLQUIST et al.　　　　　　　　　＊
　　　　Defendants　　　　　　　　＊
　　　　　　　　　　　　　　　＊＊＊＊＊＊＊

MEMORANDUM

The Plaintiffs, Michael and Leah Housley, contend that three officers of the Anne Arundel County Police Department (the "AAPD") unlawfully entered their home and used excessive force when attempting to extract Mrs. Housley, who had been identified as a potential suicide risk, from her house and return her to a hospital for a psychiatric evaluation. Mr. Housley, who refused to allow the officers into the house and claimed to have a gun, sues for injuries he sustained when he was placed in a chokehold, pepper sprayed, "tased," and shot in the left shoulder. Mrs. Housley claims that she was subjected to an unlawful seizure, and she also seeks damages for loss of consortium.

In a twelve count complaint, the Housleys have sued the three officers present during the incident and the lieutenant who authorized the entry. The Housleys have also sued the Chief of Police, the Anne Arundel County Executive, and the County itself under Monell v. Department of Social Services, 436 U.S. 658 (1978). Finally, the Housleys advance several common law tort claims. This Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1367 (supplemental jurisdiction).

The Court bifurcated the case by staying the Monell claims until the underlying claims were resolved. The claims arising from the incident proceeded to discovery, which is now

complete. Pending is the Defendants' Motion for Summary Judgment. Docket No. 64. The Court heard argument on the Motion on August 1, 2011[1]

Concluding that the officers are entitled to qualified immunity on the unlawful entry claim but not on the excessive force claim, the Court will GRANT IN PART and DENY IN PART the Motion for Summary Judgment. The excessive force and analogous tort claims must go to trial because several material facts are in dispute.

A brief summary of the Court's analysis is as follows. For the civil rights claims to survive the Defendants' Motion for Summary Judgment, the Housleys must (i) "make out a violation of a constitutional right" that was (ii) " 'clearly established' at the time of the alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Housleys bear the burden of proving the violation of a constitutional right, but the Defendants are entitled to qualified immunity if they prove that the right was not clearly established. See Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003). The Court may address either prong first. Pearson, 555 U.S. at 232.

With respect to the first prong, the case centers on the right to be free from unlawful searches and seizures. In the Fourth Amendment context, whether a violation occurred generally depends on "whether the circumstances, viewed objectively, justify the action." Kentucky v. King, 131 S. Ct. 1849, 1859 (2011). With respect to the second prong, a right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This standard " 'gives ample room for mistaken judgments' by protecting 'all but the plainly

---

[1] The Court also heard argument on two ancillary motions filed by the Defendants: Motion to Strike the Housleys' rebuttal expert (Docket No. 70) and Motion to Compel the Housleys to answer certain interrogatories (Docket No. 72).

incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The Court concludes that the Defendants are entitled to qualified immunity on the warrantless entry claim. Even if the Defendants' entry was technically unlawful, a reasonable officer with knowledge of the emergency evaluation petition could have believed that he had probable cause to enter the home forcibly and seize Mrs. Housley.

The Defendants are not entitled to summary judgment on the excessive force claims, however. These claims require the jury to choose between two conflicting narratives. Under the Housleys' version of the facts, Mr. Housley was peaceful and not a threat, and the officers used an unreasonable amount of force to subdue him. Under the Defendants' version of the facts, Mr. Housley was hostile and threatening, and the force they used was reasonable under the circumstances. Finally, the Court denies qualified immunity on the excessive force claims and concludes that it will not revisit the issue at trial. Assuming that the facts adduced at trial do not deviate significantly from the facts presented in the papers, there can be no dispute of material fact concerning the scope of the right or whether the law in this area was clearly established.

**I.      Background**

The facts are fully set forth in the parties' briefs and will be briefly summarized here. The facts preceding the officers' arrival at the Housley residence on July 12, 2009 are largely agreed. The facts leading up to the officers' entry into the residence and the shooting of Mr. Housley are vigorously disputed, however.

**A.      Emergency Evaluation of Mrs. Housley**

On July 12, 2009, Michael Housley had difficulty waking his spouse, Leah Housley. Mr. Housley eventually determined that Mrs. Housley, who was being treated for depression, had

3

overdosed on her anxiety medication. Mr. Housley's mother called 911, and a paramedic unit as well as a police officer, Officer Paul Smith, responded to the home. Officer Smith spoke to Mr. and Mrs. Housley. They explained that Mrs. Housley was being treated for depression and had taken an unknown amount of Xanax and another prescription medication. Officer Smith concluded that Mrs. Housley was a danger to herself, and he completed a petition for emergency evaluation under § 10-622 of the Maryland Code, Health General Article.[2]

The paramedics transported Mrs. Housley to the Anne Arundel Medical Center (the "AAMC") for treatment. The emergency petition required that Mrs. Housley be seen by a physician within six hours of her arrival at the hospital. Initially, a nurse practitioner evaluated Mrs. Housley and concluded that the overdose was not a threat to her health. Before hospital employees would release Mrs. Housley, however, they ordered her to undergo a mental health examination by a psychiatrist.

Mrs. Housley, who was accompanied by her husband and parents, agreed to undergo the examination but refused to be transferred to the psychiatric ward. When hospital personnel informed Mrs. Housley that she could not stay on the regular ward, she simply walked out. Mrs. Housley was never formally discharged, and she never completed any paperwork related to her release.

When hospital personnel realized that Mrs. Housley was missing, they contacted the AAPD. Officer Doyle Holquist arrived at the hospital and reviewed the emergency petition. The officer then telephoned the Housley residence and stated that he would be stopping by to check on Mrs. Housley. The officer did not explain that he planned to return Mrs. Housley to the hospital.

---

[2] The petition stated that Mrs. Housley presented a danger to herself or others because of the overdose.

### B. Incident at the Housley Residence

Three officers, Officer Holquist, Corporal Jeffrey Bauer, and Sergeant Tracy Morgan, arrived at the Housley residence. It is undisputed that, by this time, more than six hours had passed since Mrs. Housley had been admitted to the AAMC.

Mr. Housley exited the residence and met the officers outside. Officer Holquist informed Mr. Housley that the officers were there to see Mrs. Housley and return her to the AAMC. Mr. Housley refused to produce Mrs. Housley or let the officers enter his home. According to the officers, Mr. Housley was agitated during this interaction. Mr. Housley then went back inside, locked the door, and called 911.

While Mr. Housley was on the phone with the 911 dispatcher, Sergeant Morgan called Lieutenant Michael Brothers. Sergeant Morgan described the situation to Lieutenant Brothers, including her impression that Mr. Housley was very agitated. Believing Mrs. Housley to be in danger, Lt. Brothers authorized the officers to forcibly enter the residence.

While on the phone with the 911 operator, Mr. Housley heard the officers kick in his door. As a bluff, Mr. Housley told the dispatcher in a loud voice, which he intended to be overheard by the three officers, that he had a gun. Mr. Housley intended for this bluff to keep the officers outside the house. Unfortunately, it had the opposite effect.

Officer Holquist heard Mr. Housley state that he was armed, and he relayed this fact to a police radio dispatcher. The officers broke through the glass front door of the residence with an expandable baton. Mr. Housley was pepper sprayed, tased, and shot in the left shoulder.

While the parties agree on these basic facts, they disagree vehemently on the sequence of events that resulted in the use of force. The Plaintiffs admit Mr. Housley's ill-advised statement that he was armed, but they contend that he was calm and cooperative throughout the incident.

They state that Mr. Housley presented himself at the glass door with his arms raised in a non-threatening manner, that Mrs. Housley was visible at the front door and clearly lucid, and that Mr. Housley followed the officers' commands but was pepper sprayed without provocation, causing him to bend at his waist and cover his eyes in a defensive posture. They further state that while moving away from the door, Mr. Housley was tased by Corporal Bauer, he fell to the floor, and was tased again. Finally, the Plaintiffs state that Mr. Housley braced himself against a chair and spun it in front of himself defensively. Officer Holquist then shot Mr. Housley.

The officers' narrative is dramatically different. According to the officers, Mr. Housley was visible at the front door when he threatened to get his gun but moved away and remained out of sight for a few moments. Mr. Housley reappeared at the door and refused to allow Mrs. Housley to open it. When the officers shattered the door, Mr. Housley disobeyed their command to move away and was pepper sprayed. Mr. Housley then charged Corporal Bauer, who tased Mr. Housley. The struggle continued, and Corporal Bauer tased Mr. Housley a second time. Finally, Mr. Housley raised a chair above his head, and Officer Holquist, seeking to defend Corporal Bauer, shot Mr. Housley.

The officers secured the scene. An ambulance transported Mr. Housley to a hospital in Baltimore, and Mrs. Housley was returned to the AAMC for the psychiatric evaluation. She was discharged after a few hours and interviewed at a Criminal Investigation Division in Crownsville, Maryland.

### C. Criminal Proceeding in State Court

The State charged Mr. Housley with several offenses in connection with this incident.[3] Ultimately, Mr. Housley was tried on one count of reckless endangerment and two counts of obstructing and hindering a police officer, which is a misdemeanor. The jury acquitted Mr. Houlsey on the reckless endangerment charge and convicted him on both counts of obstructing and hindering a police officer. Judge Caroom of the Circuit Court for Anne Arundel County imposed a $500 fine and court costs.

## II. Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

---

[3] The State originally charged Mr. Housley with a violation of § 3-203 of the Maryland Code, Criminal Law Article, which criminalizes assault on a law enforcement officer. The State later dismissed that charge and filed the charges that were ultimately considered by the jury.

**III. Analysis**

The Housleys advance a host of claims against the Defendants. Because the Court previously bifurcated the case, only the claims arising from the incident at their residence are now before the Court. These claims comprise violations of federal and state constitutional rights and several Maryland common law torts: battery, invasion of privacy, and false imprisonment. The Court will address each of the claims in turn.

**A.     Federal Constitutional Violations**

The Housleys have filed suit for violations of their federal and state constitutional right to be free from unreasonable searches and seizures. These rights are safeguarded by the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights. The standards for analyzing whether a violation occurred is the same, see Randall v. Peaco, 175 Md. App. 320 (2007), but the immunity analysis differs, see Henry v. Purnell, No. 08-7433, 2011 WL 2725816, slip op. at *8 (4th Cir. July 14, 2011) (en banc). With this background in mind, the Court will analyze the facts of the case.

**1.     Section 1983 – Warrantless Entry and Seizure**

Before turning to the excessive force claim, the Court must decide as a preliminary matter whether the officers had the authority to enter the residence over Mr. Housley's protest and return Mrs. Housley to the hospital against her will. Although the officers did not enter the home until after Mr. Housley stated that he was armed, the Court must resolve this issue because, under the Housleys' version of the facts, the circumstances were not sufficiently exigent to justify the entry. The Defendants' motion, however, raises the possibility that the entry and seizure were justified by the mental health exception to the Fourth Amendment.

It is well-settled that the standard for a mental health seizure is probable cause to believe that a person poses a danger to herself or others. S.P. v. City of Takoma Park, 134 F.3d 260, 266 (4th Cir. 1998). The Court need not address whether the officers had the requisite probable cause to seize Mrs. Housley because it concludes that they are entitled to qualified immunity on this claim.[4]

This case questions whether a reasonable officer would know when probable cause for a mental health seizure expires. The Fourth Circuit has repeatedly noted that, in contrast to the law enforcement context, the nature of the right to be free from a mental health seizure "is not precisely defined." Bailey v. Kennedy, 349 F.3d 731, 741 (4th Cir. 2003). Thus, absent "random or baseless detention of citizens for psychological evaluations," officers are generally immunized from liability in this area. Compare Bailey, 349 F.3d at 741-42 (no immunity for officers who had no reason to believe that plaintiff was suicidal but nevertheless seized him) with Polcyn v. Martin, No. Civ.A. 6:03-2327-HFF, 2005 WL 2654259 (D.S.C. Oct. 17, 2005) (immunity for officers who knew that plaintiff suffered from bipolar disorder, had reason to believe plaintiff was intoxicated, and found plaintiff in a stranger's vehicle).[5]

Here, the right in question is the right to be free from a mental health seizure that is not supported by new, independent probable cause. The Court is not aware of any case that has spoken on this issue. Therefore, a reasonable police officer aware of the facts of this case, namely, that Mrs. Housley was the subject of an emergency evaluation petition, and that she had

---

[4] Nevertheless, the Court observes that three facts support the conclusion that the officers lacked probable cause to seize Mrs. Housley. First, approximately ten hours had passed since Officer Smith initially observed Mrs. Housley. Second, Mr. Housley told the officers that Mrs. Housley was resting when they arrived at the residence, and the officers had no reason to doubt the veracity of his statement. Third, the officers had a brief opportunity to observe Mrs. Housley and saw that she was lucid.

[5] This flows logically from the proposition that police officers are not health care professionals and must be afforded some latitude when acting on a snapshot of a person's mental health condition.

left the hospital without permission, would believe that he was entitled to seize her without making a new finding of probable cause upon arriving at the home.

The fact that Mrs. Housley was the subject of a petition for emergency evaluation carries a great deal of weight in this analysis.[6] The statute specifies that the subject of a petition must be evaluated within six hours and states that she may be held for up to thirty hours. Md. Code Ann., Gen. Health § 10-624 (LexisNexis 2011). It is silent on whether the person must be released if she has not been evaluated within six hours. Thus, the officers could have reasonably believed that the probable cause determination underlying the petition remained valid until Mrs. Housley was cleared by a mental health professional or thirty hours had passed. Put another way, a reasonable officer could have believed that Officer Smith's finding of probable cause had not expired when the three officers arrived at the Housleys' residence.

This case illustrates why law enforcement officers should not be liable for "bad guesses in gray areas." The courts have yet to establish a bright-line rule for when probable cause in the mental health context expires. Here, the officers reasonably believed that it had not. Therefore, the Defendants are entitled to qualified immunity on the warrantless entry claim.[7]

### 2. Section 1983 – Excessive Force

The Defendants are not entitled to summary judgment on the Housleys' excessive force claims. The issue of whether a right was violated rests on conflicting narratives that can only be reconciled by a jury. Admittedly, Mr. Housley's bluff that he was armed changes the excessive force calculus by dramatically enlarging the officers' permissible range of action and entitling them to act with greater speed. Thus, although the jury will have many facts to find, the

---

[6] To make such a petition, a peace officer such as Officer Smith must have "reason to believe that the individual: (1) [h]as a mental disorder; and (2) [t]he individual presents a danger to the life or safety of the individual or of others." § 10-622(a). The Housleys do not dispute that Officer Smith was justified in making this finding.
[7] Had the Court concluded that the Defendants were not entitled to qualified immunity, they would nevertheless have been free to argue two theories to the jury: (i) that they established "fresh" probable cause, or (ii) that exigent circumstances were present.

lynchpin of the Housleys' case lies in persuading the jury that Mr. Housley ceased being a threat to the officers when he presented himself at the door, that he made reasonable efforts to comply with the officers' orders, and that he did not charge Corporal Bauer or attempt to use the chair as a weapon.[8]

The Court rejects the Defendants' contention that they are entitled to qualified immunity on the excessive force claims. Although Mr. Housley did state that he was armed, he contends that he presented himself to the officers in a peaceful, non-threatening manner. It is well established the police may not use force, including pepper spray, a taser, or a firearm, on a person who has not disobeyed a police order and is not a threat. See, e.g., Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009) (denying qualified immunity where officer tased woman who refused to leave car during a traffic stop); Park v. Shiflett, 250 F.3d 843 (4th Cir. 2001) (denying qualified immunity to officers who pepper sprayed an unarmed, detained woman); Dent v. Montgomery County Police Dept., 745 F. Supp. 2d 648 (D. Md. 2010) (denying qualified immunity to officers who beat and tased an arrestee); see also Purnell, 2011 WL 2725816 at *5 (denying qualified immunity where officer shot fleeing plaintiff whom officers "had no reason to believe was a threat"). Finally, the Court will not revisit the qualified immunity issue at trial. There is no dispute of material fact concerning the scope of the right or whether the law in this area was clearly established.

Of course, the Defendants remain at liberty to argue that no violation occurred. Because the police were faced with a rapidly evolving situation, and the law requires that they be judged at the moment the force was deployed, the Court will employ a special verdict form that asks

---

[8] The Court will grant summary judgment on the chokehold claim, however. Even construing the facts in the light most favorable to the Housleys, the force was de minimis, the hold lasted for no more than a few seconds, and no lasting injuries were caused.

11

whether each use of force was reasonable. This will allow the jury to separately consider the circumstances faced by the officers as their encounter with the Houselys developed.

### 3. Section 1983 – Supervisory Liability

The Housleys have advanced supervisory liability claims against Sergeant Morgan and Lieutenant Brothers. In certain circumstances, "supervisory officials may be held liable . . . for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). A § 1983 supervisory liability claim has three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

With respect to the warrantless entry and seizure claims, Sergeant Morgan and Lieutenant Brothers are entitled to qualified immunity for the reasons discussed above. See supra Part IV.A. Even assuming that the entry and seizure were unlawful, the law concerning probable cause in the mental health context is not clearly established and, therefore, a reasonable officer would not have known it to be unlawful to authorize the officers' entry.

With respect to the excessive force claims, Lieutenant Brothers is entitled to summary judgment because he was not present at the residence and had no knowledge of his subordinates' conduct. Although she was present at the residence, Sergeant Morgan is also entitled to summary judgment. Even construing the facts in the light most favorable to the Housleys, there is no evidence Sergeant Morgan had actual or

12

constructive knowledge that her subordinates would use excessive force upon entering the home. Likewise, the Housleys have offered no evidence that Sergeant Morgan had an opportunity to intervene and prevent the officers from using excessive force. According to the undisputed facts, Sergeant Morgan stood behind Corporal Bauer and Officer Holquist as they attempted to enter the residence, and the incident unfolded sufficiently quickly such that she did not have an opportunity to order her subordinates to stop harming Mr. Housley.

### 4. Maryland Declaration of Rights

The Court will also deny summary judgment on the state excessive force claims. Maryland Declaration of Rights Articles 24 and 26 prohibit unlawful warrantless entries and employment of excessive force. These provisions are construed in pare materia with the Fourth Amendment. Randall v. Peaco, 175 Md. App. 320 (Md. Ct. Spec. App. 2007). Thus, for purposes of the pending Motion, the Housleys have established a violation of their rights under Articles 24 and 26.

Maryland officials are granted immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code State Gov't, §§ 12-101 et seq., for state constitutional violations committed within the scope of their duties when the violations are made "without malice or gross negligence." Lee v. Cline, 384 Md. 245 (2004). Notably, "[u]nlike qualified immunity from claims of violations of federal rights under § 1983, the question of immunity for State personnel from State law torts is a subjective one." Newell v. Runnels, 407 Md. 578 (2009).

The Fourth Circuit has recently explained that an officer's actions are grossly negligent "when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and

13

prudent person under the same circumstances so as to furnish evidence of indifference to consequences." Henry, 2011 WL 2725816 at *8 (quoting State v. Albrecht, 336 Md. 475, 499 (1994) (internal quotation marks and citation omitted)). This issue is generally a question for the jury. Id. (citing Taylor v. Harford County Dep't of Soc. Servs., 384 Md. 213, 227 (2004)). Construing the facts in the light most favorable to the Housleys, a reasonable jury could conclude that the officers were sufficiently "heedless and incautious" because they failed to verify whether Mr. Housley was armed or hostile before pepper spraying, tasing, and shooting him.

B.     Tort Claims

The Housleys have advanced Maryland common law tort claims for battery, false imprisonment, and invasion of privacy. The MTCA immunizes state government employees from tort liability "for actions or omissions committed with the scope of their employment and done without actual malice or gross negligence." Sykes v. Wicomico County, Civil No. CCB-05-2846, 2007 WL 1073607, at *8 (D. Md. Mar. 30, 2007) (noting that the MTCA immunizes state government employees from tort liability for actions "done without actual malice or gross negligence"). Bearing in mind that the bulk of the Houselys' case rests on the constitutional violations discussed above, the Court will briefly address each of the tort claims.

For the same reasons applicable to the excessive force claims, the Court concludes that the Defendants are not entitled to statutory immunity on Mr. Housley's battery claim. In short, a reasonable jury could conclude that the officers were grossly negligent in failing to verify whether Mr. Housley was a threat before using force against him.

The Defendants are entitled to immunity with respect to Mrs. Housley's battery claim, however. The only use of force at issue in her claim concerns when the officers restrained her

14

while they rendered aid to her husband. There is no evidence in the record that the force used during this time was excessive or unnecessary.

The Housleys' false imprisonment claim is limited to the seizure of Mrs. Housley. The Defendants are entitled to statutory immunity. The officers detained Mrs. Housley and returned her to the AAMC because they reasonably believed that the petition for emergency evaluation was still valid.[9] Thus, no reasonable jury could conclude that they acted with actual malice or gross negligence.

Finally, the Housleys have sued for invasion of privacy by intrusion upon seclusion. This tort has been defined as "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." Furman v. Sheppard, 130 Md. App. 67, 73 (Md. Ct. Spec. App. 2000). The Housleys have failed to make out a prima facie case because the intrusion stemmed from the investigation of Mrs. Housley's condition. Even assuming that the intrusion was actionable, the Defendants would be entitled to immunity because they subjectively and reasonably believed that they were entitled to enter the home to return Mrs. Housley to the AAMC.

### C. Miscellaneous Claims

Finally, the Defendants have advanced two separate claims styled as "Civil Conspiracy" and "Monetary Claims against Defendant County," which comprise Counts V and VI respectively. With respect to the former, civil conspiracy is not an independent cause of action under Maryland law. Rather, it is "a means of holding a co-conspirator liable for acts committed in furtherance of the conspiracy by another member." Woods v. Stewart Title Guar. Co., Civil No. CCB-06-0705, 2006 WL 2135518, at *3 (D. Md. July 28, 2006) (citing Mackey v. Compass

---

[9] Mrs. Housley cannot challenge her questioning at the Criminal Investigation Division in Crownsville because she has not sued the officers who transported her there and questioned her. Further, she has not established that she was not free to end the questioning and leave.

15

Marketing, Inc., 391 Md. 117, 128-29 (2006)). Here, the Housleys have offered no evidence, either direct or circumstantial, that would lead a reasonable jury to conclude that the Defendants conspired with one another. Accordingly, the Court will both dismiss this Count and preclude the Housleys from seeking to hold any of the defendants liable under a conspiracy theory.

With respect to the latter claim, the Court is not aware of a specific cause of action for "Monetary Claims" against a county. Accordingly, Count VI will be dismissed but with the understanding that the County is a proper defendant for the Monell claims. The Court will reserve ruling on the extent of the County's liability under state law because the parties have not adequately briefed the issue.

### D. Ancillary Motions

The Court will briefly address the Defendants' Motion to Strike and Motion to Compel, both of which were dealt with more fully at the hearing. The Motion to Strike is denied so long as the testimony of the Housleys' rebuttal expert, Mr. McCann, is confined to the subject of blood splatter. The Housleys may reserve the decision on whether or not to call him for trial, but if called, his testimony must be confined to a blood splatter analysis.

The Motion to Compel is granted. The Housleys must explicitly admit or deny the requests for admission posed by the Defendants. Although the Housleys object to several of the requests on relevance grounds, that is an issue to be decided by the Court at trial and not by counsel. With respect to request number 12, which concerns a statement made by Mrs. Housley and recorded by an investigator, counsel for the Housleys should listen to the recording and state whether the quoted language is accurate.

Finally, the Court wishes to address the collateral estoppel or res judicata effect of the state court verdict in Mr. Housley's criminal trial. The Court is inclined to tell the jury, as a

background matter, that there was a criminal case against Mr. Housley but that the outcome, which will not be disclosed to them, has no bearing on the issues in this suit and that they should not speculate about it.[10] The convictions for hindering a police officer are immaterial because the Court will instruct the jury that the officers were entitled to enter the home to extract Mrs. Housley and, further, that they were entitled to use reasonable force against Mr. Housley if he interfered with the exercise of their duties or they had reason to believe that he posed a threat to them.

## IV. Conclusion

For the reasons discussed above, the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART the Defendants' Motion for Summary Judgment. The Court will also DENY the Motion to Strike and GRANT the Motion to Compel. Finally, the Court DIRECTS the parties to submit a **joint status report** by **September 16, 2011** that addresses (i) whether either party intends to take an interlocutory appeal; (ii) whether the parties wish to participate in a settlement conference before a United States Magistrate Judge, or (iii) whether the parties wish for the Court to set a trial date at this time.

Dated this __30th__ day of __August__, 2011.        /s/
                                                    Benson Everett Legg
                                                    United States District Judge

---

[10] The Defense argues that the convictions conclusively establish that Mr. Housley was a fleeing felon and that he assaulted the police, but this is a bridge too far. Because the court in the criminal case employed a general verdict form, the actions giving rise to the convictions could have occurred at any point during the incident.