UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL HOUSLEY et al., | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. L-10-1881 |
| | * | |
| DOYLE HOLQUIST et al., | * | |
| Defendants | * | |

*******

**MEMORANDUM**

On August 30, 2011, the Court GRANTED IN PART and DENIED IN PART Defendant's Motion for Summary Judgment. Docket No. 89. Upon affirmation of Plaintiff's state criminal convictions by the Maryland Court of Special Appeals, Defendants renewed the Motion. Both parties have submitted papers and the Court heard brief argument on the matter at the June 14, 2012 Pre-Trial Conference. Concluding that material issues of fact remained unresolved, the Court DENIED the Renewed Motion for Summary Judgment. Docket No. 151. The Court now writes to explain its reasoning.

**I.     Background**

The facts, both disputed and undisputed, are fully set forth in the parties' briefs and need not be restated herein. The events preceding the arrival of Corporal Holquist, Corporal Bauer, and Sergeant Morgan at the Housley residence on July 12, 2009 are undisputed. It is the facts leading up to the officers' entry into the residence, and the subsequent pepper spraying, Tasing, and shooting of Mr. Housley that are the subject of this Motion.

Following the July 2009 incident at the Housley residence, the State of Maryland charged and tried Mr. Housley on one count of reckless endangerment and two counts of obstructing and

1

hindering a police officer, both of which are misdemeanors.[1]  The jury acquitted Mr. Housley on the reckless endangerment charge and convicted him on both obstructing and hindering counts.

On May 4, 2012, the Maryland Court of Special Appeals affirmed the judgment, holding inter alia that the record contained sufficient evidence to support the jury's verdict.  In its analysis, the Court of Special Appeals considered the facts in a light most favorable to the State.  As recounted by the court, the facts regarding Defendants' entry into the Housley residence and ensuing events are as follows:

> When the officers knocked on the door, [Mr. Housley's] dogs came out of the doggy door and behaved aggressively, causing the officers to retreat. [Mr. Housley], appearing angry and frustrated, came out of the house.  Holquist told [him] that they needed to check on Mrs. Housley and return her to the hospital. [Mr. Housley] told them that Mrs. Housley was not going back to the hospital, that they could not see her, and ordered the officers off his property.
> The officers repeatedly told [Mr. Housley] that they needed to check on Mrs. Housley and that she was to return to the hospital.  After a few minutes, [he] tried to walk away and Holquist put his hand on [Mr. Housley's] shoulder to stop him. [He] turned, pushed Holquist, went into the house, and locked the door.
> The police officers, talking through the closed door, tried to convince [Mr. Housley] to open the door and let them inside.  They then told [him] that he was under arrest (presumably for pushing Holquist) and that they needed to return Mrs. Housley to the hospital. [Mr. Housley] yelled back for them to get off of his property and that he was calling his lawyer.
> The officers heard [Mr. Housley] say that he was going to get a gun, and could see him talking on the phone.  Holquist was advised by dispatch that [Mr. Housley] had telephoned 911 and advised the operator that he was going to get a gun. Holquist pulled his service weapon out and was in the ready position, at which time [Mr. Housley] came to the front door and yelled, "Go ahead and f'ing shoot me."  While they were still outside, Mrs. Housley, appearing upset and confused, walked into view and approached the front door. [Mr. Housley] told Mrs. Housley to move away from the door.
> The officers consulted their lieutenant and obtained permission to make a forced entry into the residence to retrieve Mrs. Housley.  There was concern that Mrs. Housley was in danger because she was suicidal and had not been seen by a doctor.  Holquist tried unsuccessfully to kick the door open. Bauer removed his ASP baton and broke the door glass. [Mr. Housley] was standing by the door, trying to hold it shut, and did not move after the glass broke. [Mr. Housley] was

---

[1] The State originally charged Mr. Housley with a violation of MD. CODE ANN., Crim. Law § 3-203 (West 2012), which criminalizes assault on a law enforcement officer as a felony.  The State later dismissed that charge and filed the charges that were ultimately considered by the jury.

> ordered to move away from the door, and when he did not Holquist deployed his pepper spray on [him].
>
> At that point, Bauer entered the house and pushed [Mr. Housley] to the right, away from the kitchen. Holquist followed Bauer into the house and saw that Bauer and [Mr. Housley] were in a physical altercation. [Mr. Housley] fell to the floor, but stood back up, approached Bauer, and wrapped his arms around Bauer's midsection. Bauer "tased" [Mr. Housley], causing him to disengage and fall to the floor. When [Mr. Housley] was able to stand up again, he walked towards the living room, started to raise a chair over his head, and brought the chair down, "in a striking manner." Seeing [Mr. Housley] with the chair, Holquist thought Bauer's life was in danger. Holquist yelled "Drop it!" and fired one round from his handgun, which struck [Mr. Housley] and caused him to fall to the floor. Holquist and Bauer provided first aid to [Mr. Housley] until the paramedics arrived.

Housley v. State, No. 1767, *3–5 (Md. Ct. Spec. App. May 4, 2012).

After the Court of Appeals issued its opinion, Defendants renewed their Motion for Summary Judgment, arguing that the Court should, under the doctrine of collateral estoppel, accept and preclude re-litigation of the appeals court's version of the facts.

**II.   Standard of Review**

The Court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no

evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.2d 962, 967 (4th Cir. 1995).

**III.   Analysis**

Defendants ask the Court to apply the doctrine of collateral estoppel not to a set of discrete or specific facts, but rather to the version of events articulated by the Maryland Court of Special Appeals in entirety.  Defendants seek to avoid re-litigation of the facts regarding the officers' entry into the Housley residence as well as those related to the subsequent altercation between the officers and Mr. Housley.  These events are the foundation upon which Mr. Housley has built his claim of excessive force.[2]  Defendants contend that the facts as stated by the Court of Special Appeals establish conclusively that their actions were reasonable as a matter of law.  Summary judgment for Defendants would, therefore, be appropriate.

The doctrine of collateral estoppel, or "issue preclusion," is employed to prevent, in a subsequent proceeding, duplicative fact-finding. See Crane v. Puller, 899 A.2d 879, 894 (Md. Ct. Spec. App. 2006).[3]  Collateral estoppel is firmly rooted in common law, and thus its scope is governed by the applicable state law. Janes v. State, 711 A.2d 1319, 1324 (Md. 1998).  Here, Maryland law applies.  Under the doctrine, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Id. (quoting Murray Int'l v. Graham, 555 A.2d 502, 504 (Md. 1989) (quoting RESTATEMENT (SECOND) of JUDGMENTS, § 27 (1982))).  Collateral estoppel functions as a means through which the parties, and the court, may prevent the "expense and vexation of

---

[2] On the eve of trial, Mr. Housley dismissed with prejudice his battery claim. See Docket No. 148.
[3] Though collateral estoppel is often confused with res judicata ("claim preclusion"), it is far narrower in its scope and consequences. Crane, 899 A.2d at 892, 894.  Whereas res judicata, in which the causes of action are identical, bars the subsequent suit completely, collateral estoppel precludes only the re-litigation of those facts or issues actually determined in the first case. MPC, Inc. v. Kenny, 367 A.2d 486, 489 (Md. 1977).

multiple lawsuits, conserve judicial resources, and foster reliance on judicial actions by minimizing the possibilities of inconsistent decisions." Janes, 711 A.2d at 1324 (quoting Murray, 555 A.2d at 504 (citing Montana v. United States, 440 U.S. 147, 153–54 (1979))).

The concern for fairness and prevention of duplicative fact-finding underlying the doctrine is reflected in its elements:

(1) The issue sought to be precluded is identical to one previously litigated;
(2) The issue must have been actually determined in a prior proceeding;
(3) Determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;
(4) The prior judgment must be final and valid; and
(5) The party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

Thacker v. Hyattsville, 762 A.2d 172, 183 (Md. Ct. Spec. App. 2000) (quoting Sedlack v. Braswell Svcs. Group, 134 F.3d 219, 224 (4th Cir. 1998)).  Each element will be discussed in turn.

First, collateral estoppel necessitates a finding that the issue to be precluded is "identical to one previously litigated." Id.  Defendants wish to preclude Mr. Housley from re-litigating which version of the facts is the correct version.  Because the issue to be precluded is the entire universe of facts surrounding the confrontation between Mr. Housley and Defendants, this issue is identical to the "one previously litigated."  Both the criminal prosecution and the instant action stem from this confrontation.

Second, collateral estoppel requires that, in the prior proceeding, the issue was "actually litigated and determined." Janes, 711 A.2d at 1324.  This requirement ensures that both parties have "had [their] day in court" on the particular issue in question. MPC, Inc. v. Kenny, 367 A.2d 486, 490 (Md. 1977).  Importantly, the element is not concerned "with the legal consequences of a judgment," but instead with the "findings of ultimate fact, when they can be discovered, that

necessarily lay behind that judgment." Crane, 899 A.2d at 894 (quoting Burkett v. State, 633 A.2d 902, 905 (Md. Ct. Spec. App. 1993)).

When the subsequent litigation requires the presentation of identical evidence, then the doctrine of collateral estoppel may apply. MPC, 367 A.2d at 489–90. In MPC, the court determined that certain facts, such as appellants' negligent installation of a plate glass door, had been determined conclusively against appellants in the first proceeding. Id. The second suit differed from the first only in that appellants joined an additional party. Id. Because the facts at issue required presentation of the same evidence as that which had been presented in the first suit, any re-litigation would have been wasteful and fruitless. Id. at 491. Accordingly, the court applied the doctrine to the issue of negligent installation. Cf. Lee v. State, 489 A.2d 87, 89–90 (Md. Ct. Spec. App. 1985) (collateral estoppel inapplicable as prior judge "carefully abstained from making any clear determination" of the issue to be precluded).

Because the doctrine applies narrowly only to those specific facts or issues that have "actually been determined and litigated," it cannot be used to prevent the re-litigation in a subsequent case of an entire series of events that may or may not have factored into a jury verdict in the first case. Put another way, "a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent procedure the truth of the facts on which it is rendered." Kane v. Hargis, 987 F.2d 1005, 1008 (4th Cir. 1993) (applying Virginia's settled rule). When the first proceeding is a criminal case in which the jury returns a simple verdict of guilty or not guilty, there is no way for the court presiding over the subsequent proceeding to identify which facts the jury "found" in order to reach that verdict. In other words, it is not clear which of the many disputed facts were "actually litigated and determined" in the prior proceeding.

The complete version of events proffered by the State at Mr. Housley's criminal trial, therefore, was not "actually litigated and determined" for purposes of collateral estoppel. The nature of a jury verdict makes it impossible to determine whether or in what way each "fact" in the confrontation between Mr. Housley and Defendants was actually determined by the jury. That an appeals court recited a version of the events that favors Defendants in affirming the jury's verdict does not change this conclusion. Moreover, the "legal consequences" of Mr. Housley's criminal conviction are irrelevant. See Crane, 899 A.2d at 894. Though Mr. Housley was found guilty of the offense of obstructing and hindering a police officer, neither the trial court nor the Court of Special Appeals was privy to the deliberations of the jury. Thus, it is impossible to determine exactly which facts "necessarily lay behind that judgment." See id.

Of the four elements comprising the common law offense of obstructing and hindering a police officer in the performance of his duty, each element required the jury to have accepted at least some of the facts proffered by the State. See Housley, No. 1767 at *6.[4] The fourth element, for example, necessitated the jury's determination that Mr. Housley had the intent to hinder or obstruct Defendants. The record does not indicate, however, whether the jury found the requisite intent to have existed during the initial confrontation between Mr. Housley and Defendants, the telephone call Mr. Housley made to 911, or when Mr. Housley allegedly raised a chair before he was shot by Corporal Holquist. The jury could have based its decision on the State's version in every instance, or on a more limited set of facts. Because no version of the facts was "actually determined" in the prior proceeding, this element has not been satisfied and

---

[4] The elements of the offense are:
  (1) A police officer engaged in the performance of a duty;
  (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;
  (3) Knowledge by the accused of facts comprising element (1); and
  (4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).
Id. at *6 (citing Titus v. State, 32 A.2d 44, 47 (Md. 2011) (quoting Cover v. State, 466 A.2d 1276, 1284 (Md. 1983))).

the doctrine cannot apply.  Nevertheless, the Court will briefly consider the remaining three elements to complete the analysis.

Third, collateral estoppel is appropriate only if the determination of facts in the prior proceeding was a "critical and necessary part of [that] decision."  Thacker, 762 A.2d at 183.  As discussed above, it is not possible to identify with exactitude the facts upon which the jury relied in convicting Mr. Housley.  The Court cannot determine, therefore, which facts were a "critical and necessary part" of the jury's decision.

Fourth, an issue cannot be the subject of collateral estoppel unless it was "determined by a valid and final judgment."  Janes, 711 A.2d at 1324.  That the prior judgment was final and valid is not disputed here.

Finally, the fifth element necessitates a finding that "the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum."  Thacker, 762 A.2d at 183.  As the Supreme Court has explained, if the parties had "every incentive to litigate" the issues "fully and vigorously," then there is no unfairness in precluding re-litigation of those issues.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332 (1979).  Mr. Housley received a "full and fair opportunity to litigate" the facts arising from his confrontation with Defendants.  As a defendant in a criminal trial, facing the threat of fines and a possible prison sentence, Mr. Housley had "every incentive to litigate [these facts] fully and vigorously."

**IV.   Conclusion**

In sum, the doctrine of collateral estoppel cannot be applied to preclude re-litigation of any facts surrounding the confrontation between Mr. Housley and Defendants because, although Defendants' version of events was presented in a prior proceeding, no facts were "actually litigated" within the meaning of the doctrine.  Defendants' argument that the jury in the criminal

trial necessarily accepted each and every fact offered by the State does not acknowledge the necessary mystery of a jury's deliberations and verdict.  Defendants have not proven and cannot prove the required second and third elements.  Because the doctrine does not apply, determining conclusively what happened between Mr. Housley and Defendants is the task of a jury, not the Court.  The facts being unresolved, the Court cannot conclude as a matter of law that Defendants' use of force was reasonable.

Dated this 3rd day of August, 2012.

/s/
_____
Benson Everett Legg
United States District Judge