UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL HOUSLEY et al., | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. L-10-1881 |
| | * | |
| DOYLE HOLQUIST et al., | * | |
| Defendants | * | |

*******

**MEMORANDUM**

During the recently concluded trial in this case, Mr. Housley filed a Motion for Reconsideration and Request for Curative Instruction. Docket No. 161. This opinion briefly memorializes the reasons for the Court's denial of the Motion.

This an excessive force case arising under 42 U.S.C. § 1983. The plaintiff is Michael Housley. The defendants, Corporal Holquist and Corporal Bauer, are members of the Anne Arundel County police force. Because the facts are extensively described in the Court's summary judgment opinion, they need not be restated here. See Docket No. 88. Simply put, the officers arrived at the Housley residence on July 12, 2009 for the purpose of enforcing a Petition for Emergency Evaluation. In order to do so, the officers needed to retrieve Mrs. Housley and return her to the Anne Arundel Medical Center so that she could be evaluated by a mental health practitioner as directed by the Petition. Although this is an oversimplification, Mr. Housley refused to permit the officers to enter his house or see his wife. Pretending that he was armed with a handgun, he ordered the officers to back off. Hearing this, the officers broke through the glass front door and entered the residence. Before and during trial, the parties vigorously disputed the facts regarding what happened inside the house. Not in dispute was that Mr. Housley was pepper sprayed by Corporal Holquist, tased twice by Corporal Bauer, and finally

shot in the shoulder by Corporal Holquist.  The bullet exited and re-entered Mr. Housley's body before exiting a final time near his jaw and doing extensive damage.

In its summary judgment opinion, the Court found that the officers were entitled to qualified immunity with respect to two decisions.  First, that the Petition was still valid and entitled them to return Mrs. Housley to the hospital without making a new finding of probable cause.  Second, that they were entitled to forcibly enter the Housley residence in order to retrieve Mrs. Housley.  As explained in the opinion, qualified immunity did not apply to Mr. Housley's excessive force claim because the force was used after the officers had entered the house.  During trial, the Court instructed the jury to view each of the four allegedly excessive uses of force in turn and determine whether each use of force was or was not objectively reasonable under the circumstances.  The jury returned a defense verdict finding each use of force to be reasonable.

In the Motion to Reconsider, Plaintiff asked the Court to revisit its rulings on qualified immunity with respect to the Petition and the forcible entry.  Additionally, Plaintiff wished to argue to the following to the jury:

i.  The officers acted rashly and illegally by deciding to return Mrs. Housley to the hospital for an evaluation.

ii.  Before returning Mrs. Housley to the hospital, the officers should have conducted an investigation (e.g., interview hospital personnel) to determine whether she still posed a threat to herself.

    iii.    When Mr. Housley refused to let the officers into his house, the officers should have remained outside, treating the incident as a barricade situation and calling in a hostage negotiator or a SWAT team.

    iv.    Had the officers done so, the forcible entry into the residence and subsequent uses of force against Mr. Housley could have been avoided.

    v.    Evidence of the officers' rash and ill-advised decision to enter the house and retrieve Mrs. Housley was admissible to establish that the officers' actions inside the house were equally rash and ill-advised.

The Court ruled that it would not reconsider its decisions regarding qualified immunity. Mr. Housley's Motion to Reconsider was deficient for several reasons. First, it was filed on July 17, 2012, eleven months after the Court's summary judgment opinion and accompanying order had issued. Under Local Rule 105.10, "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." The Motion to Reconsider, therefore, was filed out of time.

Second, the Motion failed to cite a single case or make a legal argument. It consisted entirely of expressions of disagreement with the decisions of the officers and the Court's rulings on qualified immunity. For example, the Motion characterized Corporal Holquist's understanding and interpretation of the Petition as "preposterous unless you are governed by the Taliban." Pls.' Mot. for Recons. 12, Docket No. 161.

Third, the officers' decisions before entering the residence were not admissible to show that the officers had a propensity to act rashly. See FED. R. EVID. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the

person acted in accordance with the character or trait."). The Court's instructions properly focused the jury's attention on the four specific uses of force at the time the force was used.

Finally, the evidence at trial reinforced the correctness of the Court's pre-trial qualified immunity rulings. Mr. Housley locked the door to his house, refusing to let the officers speak to his wife or return her to the hospital. While on the phone with a 911 operator, Mr. Housley claimed, in a voice he intended to be heard by the officers, that he had a 9mm handgun. See Defs.' Mot. for Summ. J. Ex. 12 (Transcript of 911 Call at 5–6), Docket No. 64 (instructing Mrs. Housley to "go and get my gun" and telling the operator ". . . I have a gun in my hand, so you better tell 'em to back off or I'm gonna . . ."). Additionally, Lieutenant Brothers, a supervisor who was not on the scene, specifically authorized the defendants to enter the Housley residence by force. Based upon these facts and others presented at trial, it is clear that the officers' decision to enter the house is protected by qualified immunity and could not be second guessed.

As mentioned, the Court's instructions clearly focused the jury on the officers' four uses of force inside the Housley residence. The jury was asked to return a verdict as to each use of force. The jury determined that each use of force was reasonable under the circumstances. With respect to the primary use of force, the shooting, the jury was presented with a clear choice between two irreconcilable narratives. Mr. Housley contended that he was cowering behind a chair in an attempt to defend himself when he was shot. The officers contended that Mr. Housley had lifted the chair over his shoulder in a swinging motion and was threatening to strike Corporal Bauer with it when, in response, Corporal Holquist fired the shot. Experts from both sides agreed that shooting Mr. Housley if he had been cowering behind the chair would be an unreasonable and excessive use of force, whereas the use of force would be justified if Mr.

Housley had been swinging the chair.  Accordingly, the jury must have credited the officers' testimony over Mr. Housley's.

Dated this 10th day of August, 2012.

                                                                            /s/
                                                  _____
                                                  Benson Everett Legg
                                                  United States District Judge